May I please, the court, good morning. Haitham Balut for petitioner. I refer to him as Bias, just to make it easy for everybody, his first name. If I may begin with the issues that are not much of an issue for both sides, and I'll get to the meat of this case. We are reviewing a motion to reopen for abuse of discretion. The BIA allows a motion to reopen or to go through if it meets the Lozada requirement. There is no issue that Lozada requirement is not met in this case. The government has agreed not to defend at least the BIA decision on that. Second, the court will look at whether the counsel assistant was deficient. In all likelihood, I doubt the government is going to say Mr. Lozada's performance was not other than deficient. So I think that's an issue that we can go through fairly quickly. Other than the deficiency of the prior counsel, we have to demonstrate in that motion to reopen that the deficiency of the prior counsel demonstrated prejudice as a result of that deficiency. So that obviously is an issue that I'll address as well. In this case, prejudice, keep in mind, Your Honors, it has to only the alien rights or the alien's right has to be violated in such a way as to affect potentially the outcome. It doesn't have to mean it's definitely going to affect the outcome, just potentially the outcome. In this case, we have an attorney who has done nothing, not a single document, not a single witness, and was given a continuance of 70 days from the day he started, the judge, for maybe as an excuse or maybe to give him more time, said, okay, come back in 70 days. Even on those 70 days, he did nothing. We assembled. Okay. I'll just go straight to the chase for me. Here's my problem with your case. Sure. I read the transcript of the hearing in front of the IJ, and based on what was said in that testimony, I think the adverse credibility finding was amply supported. For example, in the hearing in front of the IJ, he couldn't decide whether the people who had come to him wanted to pay him money, wanted to take money from him, and he ultimately decided that they wanted to do both, and it was somehow coercive that they wanted both to give him money and to take money. Also in that testimony, he couldn't decide whether he had been told to lie down on the floor or whether he'd been hit such that he fell to the floor. In the material submitted in support of the motion to reopen, we have evidence that he testified in front of the IJ that he didn't go to the hospital. I have trouble attaching those things that seem to support adverse credibility findings, both in front of the IJ and now with more evidence later to support an adverse credibility finding, I have trouble attaching those to a deficiency by the by counsel. I mean, he's testifying, and he's having trouble with his story. So help me out if you can. I appreciate the question, Judge Fletcher. Now, remember his wife and daughter were in the court. Remember that his wife and daughter were at the home when the officers came in. They know everything about him. The wife certainly knows everything about his history. We have a doctor's psychiatrist report that says, look, this man has suffered post-traumatic syndrome. His man, according to the doctor, in her opinion, Your Honor, says he is he's having cognitive deficiencies. Now, that is part of the issue of this case, that this man cannot remember enough details. Now, if he's trying to lie, Judge Fletcher, wouldn't he say I went to the hospital? It defeats his own purpose to win an asylum if he says I never went to the hospital. It just gives you an indication that he's really having a hard time recollecting events, because he could go in the hospital is helpful to him, and he says I didn't. Yet the record shows he did. He suffered concussion. He was he had kidney issues. He suffered also a psychiatric issue, the psychological issues. That's recorded in Mongolia. So that is why we feel that he was not given enough chances by Mr. Zadeh. He did not present his case well. Does that address your issue? Yeah. It's against his interest to say I didn't go to the hospital. It's just a it's a it's a it's the number thing you want to say if you really were abused or tortured or persecuted in another country. I've been to the hospital. Here's the record. And he said none, because of, in my view, his cognitive deficiencies, as described by the doctor. If I may read to you, this is what the doctor says of her own opinion. It is my professional opinion. That's a doctor, UCSF graduate, a psychiatrist, MD, never had an issue. It's my professional opinion. He suffers from post-traumatic disorder as well as cognitive dysfunction with symptoms in the range of moderate degree of cognitive impairment. That's a psychiatrist, Your Honor, saying that. Why should we second-guess this? And, frankly, by sitting down with him for a bit, by sitting down with him for just not too long, that's why I sent him to a psychiatrist. It doesn't take a genius to find out he's having a problem. And that's why we decided to go that way. So that's the prejudice issue. Witnesses, documents, hospital records, and his own dad testifying on these issues. One of the other issues that you probably have to deal with is the 90-day deadline, Your Honor. The motion has to be filed within 90 days. So, luckily, we have the Evagen court that gives us a framework of what allows, when does a motion based on effective assistance of counsel call the 90-day deadline. So in this case, we have an attorney. Recall, he found an ad in Russian of a Felix group that speak Russian, went to them, paid $7,000, and they said, don't worry, we'll handle everything. And they found him, Mr. Zadeh, who met with them 20 to 30 minutes before the individual hearing. This is a capital punishment for someone who's here if they – if this is a day in court. This is what's going to keep them here or send them back to the persecutors. Twenty to 30 minutes. I submit to you, Your Honor, we spent almost a day between preparing records, between meeting with clients, witnesses, expert. It's way – the deficiency is there. The prejudice is there. And because he relied on Mr. Zadeh for all this time, up to the BIA decision, so certainly that time is told, then he hires another attorney because the Felix group is done with his work. And that attorney doesn't say anything for five years. So how is he supposed to know that someone has really done harm to him and not presented his case correctly? So I submit to you that the 90 days should be told up to the day that he arrived in my office. And within 20-day-plus, we filed a motion to reopen. That is the due diligence, the action within 20 to 30 days on filing the motion to reopen. To sum it up, may I take a couple minutes reserve? Yes. Why don't you relitigate from the government, and then you'll get a chance to respond. Thank you. May it please the Court. Walter Bocchini for the Department of Justice. Your Honor, the key fact that requires now the petition for review is Petitioner's assertion that for five years after he parted with his first attorney, Mr. Zadeh, he was represented by competent counsel. And so a reasonable person under Petitioner's particular circumstances, as an alien with competent counsel, would have had reason to suspect of the alleged ineffective assistance of counsel that he underlies his motion to reopen. But, counsel, you're saying that he wasn't diligent then? Yes, Your Honor. Are you familiar with our decision in, I'm not sure if I'm pronouncing it right, Garamani? Yes, Your Honor. I thought that case was identical on the facts to this one. So maybe you can explain why it's distinguishable. Sure thing, Your Honor. The going to Avagnon, which outlines the framework for ineffective assistance claim, Avagnon establishes when a reasonable person has reason to suspect of the ineffective assistance, whereas Garamani doesn't address that at all. Garamani isn't another prong of the ineffective assistance claim. It's addressing when an alien has no reason to suspect and is completely ignorant of the ineffective assistance below. When that's the case, as long as the alien continues to pursue the claim, continues to pursue the case, it's being diligent up until a point that he or she definitively learns of the ineffective assistance. Okay. But so isn't that isn't Petitioner here in the exact same shoes? I mean, how is he supposed to know just because he got an I, an adverse IJ ruling, just because he got an adverse BIA ruling, how is he supposed to know that he had been the victim of ineffective assistance? Well, Your Honor, it's a reasonable person inquiry under the Petitioner's particular circumstances, and he's asserting that he had competent counsel for five years after the agency decision. But so was the Petitioner and Garamani. That's what I'm saying. There was no difference there. They weren't alleging that the counsel sandwiched in the middle was incompetent. Well, Your Honor, again, it's the different prongs of the IAC claim.  Nothing in the decision in the case, there's a reason to suspect of the um Right. But I'm saying, so tell me what is what's so special about this case that shows that the Petitioner here had a reason to suspect, whereas the Petitioner and Garamani didn't. Well, Your Honor, the I we don't know the well, the decisions in Garamani were a lot more convoluted than the decisions in in in this case. The Garamani decisions, there were multiple issues going on, multiple attorneys being hired. It wasn't clear when when the issue became clear to the to the to the alien. Here, the agency decisions, both the immigration judge's decision and the BIA decision focused exclusively on the adverse credibility finding, the same adverse credibility finding that Petitioner now claims was caused by ineffective assistance. And the fact that he had competent counsel for five years who filed a petition for review in this Court, had to review the full complete records of immigration proceedings and pursue that ineffective assist, I'm sorry, the adverse credibility finding, means that he should have at some point, competent counsel would have been able to. I mean, I'm just looking at the relevant passage in Garamani, and I'm telling you, we didn't say anything. There was nothing special about this case, about Garamani, that distinguishes it from this. If what you're focused on is that something should have alerted the Petitioner here to the fact that he had gotten, he had received deficient performance from his lawyer. And another point in Garamani is that he had Garamani got counsel at the time he had a full record of immigration proceedings. Then he filed a petition for review. But within 90 days of that, they filed a motion to reopen. Whereas here, they had a full record of the immigration proceedings, hired counsel, and then for five years pursued a claim before this Court. So again, it's not, it's not, it's just because he had competent counsel who would have been, who would have been reviewing the record, who would have been pursuing the very specific issue that he now claims was caused by ineffective assistance of counsel. And so a reasonable person in his circumstances would have had reason to suspect that he, that there was ineffective assistance below. And he had to take, and at that point, he had to take affirmative steps to investigate the ineffective assistance claim. It wasn't sufficient for him to say that I'm ignorant, because a reasonable person's standard applies. Roberts, maybe you could shift to prejudice, because you could still win on prejudice. Oh, yes, Your Honor. Well, I mean, Your Honor, the evidence that he submitted supports the adverse credibility finding further, because it creates another discrepancy in the record, specifically the hospital report he claims that he, before the meeting. But, I mean, as I understand the Petitioner's argument here, I mean, he basically had zero preparation going into the hearing, right? I mean, presumably, with some minimal amount of preparation, he, the lawyer could have at least become aware that maybe he was going to have trouble with details, could have explained that to the immigration judge. His wife and daughter, I think it was, could have presumably been called to testify and corroborate the details if there were some inconsistencies. And what about counsel's point that, well, if he really, if his motive really were to make up a story, why wouldn't he have made it up in a way that was favorable to him rather than unfavorable? Well, Your Honor, before the immigration judge, at no point did he say that he was suffering from psychological issues. So there's nothing to indicate that that was the issue below. Well, but that's not necessarily the point. The question is not whether the I.J. made a mistake, given the evidence that came in in front of her. The question is, now that we have evidence that he was suffering from cognitive impairment, what do we do with that? And I take Judge Watford's point that, you know, if he's a liar, he's a really bad liar because he told a story that was less favorable to himself than he now tells. For example, if you want to talk about persecution, it's much better to have gone to the hospital than not. If you want to talk about sort of extortion or coercion, you don't really want to say they tried to give me money. Well, Your Honor, the thing with the psychological report is that it doesn't even go to prejudice in this case, because here, under the Azenor case that the Board cited in its decision, Petitioner never told his first attorney that he was suffering from psychological issues. So any prejudice flowing from the ---- But it's common experience, I think, among all of us, that people who do suffer from various cognitive impairments often don't talk about it and often themselves are not aware or only partially aware of it. And the argument here is, and there's some evidence now in the motion to reopen to support it, that if you talk to this man for a while, you realize it. Now, the argument is, if his prior counsel had talked to him for more than 20 minutes, maybe he would have realized it, too. So how do you respond to that? That's, as we pointed out in our brief, that's not the expertise of the counsel. Counsel needs to ---- counsel should be aware of legal issues, not whether there's an underlying psychological issue. I think that ---- Well, but that's not necessarily so. That is to say, the argument is that he's got various ---- he's got psychological impairment or cognitive impairment. And you don't necessarily have to be a trained psychiatrist to recognize that. I mean, you know, we all just deal with ordinary people. And if they have trouble hanging on to detail or the detail starts out where they wanted to give me money, but then in a minute it shifts, they wanted to take money away from me, you don't have to be a psychiatrist to figure out there's some cognitive difficulties. Yeah, but that's still an undue burden to place on an attorney when that's not his specialty to be able to recognize. But the burden on the attorney is to meet for the client for long enough to figure out what the story is. And this does not seem to be contested, that the first attorney met for him for a very brief period. Well, and again, neither were the second attorneys. Supposedly, the second competent attorney would have met with him, and nothing came of that as well. So it wasn't just one attorney who never brought this up. It was also the second attorney. So again, it just doesn't seem like an attorney would have been able to realize that issue. That's just not the expertise. And we have two attorneys who didn't, whether the first one was ineffective or not, which I won't say he wasn't. Obviously, there is the board decision in this case that pointed out that the brief was, the appellate brief to the board was ineffective, was not very good. So there was that. That's a gentle way of saying it. But again, that does go to show, again, that the competent counsel in the middle should have picked it up on the ineffective assistance claim and pursued that. And nothing happened for five years. And so I submit that the diligence prong is still the reason why this Court should not have petitioned for review. If there are no further questions, Your Honor. Roberts. Thank you. Thank you. Response. Thank you, Your Honor. I often tell my clients, if I practice law more than 50 percent, I'm not a good lawyer. The other 50 percent is just that, listening, finding out if they are — if they're on the right track, assessing their demeanors, especially before immigration courts. Now, don't let us not forget, Your Honor, that if the credibility is a big issue that they have not overcome the credibility, let us not forget, CAT does not require credibility. The CAT claim can win just based on the country condition. This is a Camalthus case written by no one other than — I'm not sure I understood you. Did you just tell me a CAT claim doesn't require credibility? Yes, Your Honor. It can win based on — this is strictly from the Camalthus case by Judge Fletcher, Betty Fletcher. In particular, we find that the board abuses its discretion in failing to recognize that country conditions alone can play a decisive role in granting relief under the Convention. Decisive role. It overcomes the credibility issue. So if we brought — and even the country report, by the way, does say that we have a problem with abuse of prisoners of torture. That's all in there. Thanks for the government who submitted that evidence, not Mr. Zadi himself. So that's an issue that we have — we cannot forget. On the other issue, we talked about expertise. Okay. So that is a very important issue. So if nothing else, if nothing else, haven't we shown enough that he may be tortured? And there is five or four elements that we have to talk about if — whether he'll be tortured in the future if he returns to Mongolia, and one of them is the country conditions. Thank you. My time is up. Okay. Thank you. Thank you both. Any questions? No? Thank you both sides for their arguments. The case is now — the case just argued is now submitted for decision.
judges: Duffy, Fletcher, Watford